# Ely, *et al. v.* Brewer.

### *Bill for Partition.*

(Decided June 11, 1913.    Rehearing denied June 30, 1913.
62 South. 742.)

1. *Appeal and Error; Waiver of Error.*—Where the overruling of a defendant's demurrer to the bill is not insisted on, on appeal, as error, the error, if any, will be considered waived.

2. *Deeds; Ttitle; Erasure.*—Where one of several grantors erased his name with the consent of the grantee under the impression that such action would revest title in him, the legal title of such grantor was not divested from the grantee, although the equitable title was, the conveyance having already been recorded.

3. *Estoppel; Equity.*—Where a grantee in a deed consented to the erasure of a name of one of her grantors under the mistaken belief that such erasure would revest him with the title, and thereafter the grantee consented to the sale of such grantor's interest to a third person, the grantor is estopped from ever afterwards setting up her legal title.

4. *Partition; Right to.*—Where respondent purchased the interest which complainant's grantor inherited in a tract of land from his mother, but declined to purchase the interest which complainant's grantor acquired by purchase, and afterwards held the entire tract, refusing to admit complainant, into possession or to allow him to participate in the rents and profits, complainant's grantor having a good, equitable title, complainant was entitled to partition.

APPEAL from Macon Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by S. L. Brewer against J. H. Ely and others for partition and division. Decree for complainant, and respondents appeals. Affirmed.

The facts as found by the chancellor are as follows: "The original owner of the land in controversy was Mary E. Chesson, who died leaving five children as heirs, and among them was J. F. or Frank Chesson. All these heirs sold and conveyed their interest to Priscilla Blount, their sister, and made conveyance to her, some of them without consideration, but it seems that she promised to pay Frank Chesson for his interest, and

that she failed to pay him the purchase price, and that subsequently W. B. Blount, who was at the time working for his uncle F. J. Chesson, and upon the suggestion of the latter, and with the knowledge and consent of his mother, Priscilla Blount, purchased said interest from Frank Chesson, and that the purchase was consummated in the following manner, all of which was known to and assented to by Mrs. Blount: The original deed to Mrs. Blount was returned to J. F. Chesson, who erased his name therefrom, and together with his wife executed a deed to W. B. Blount, and delivered the same to him, Blount paying him the purchase money; that the original deed was then returned to Mrs. Blount, who was advised of the circumstances and ratified and consented to it, and always thereafter recognized the interest of W. B. Blount therein, and upon her deathbed called all her children to her, and in the presence of witnesses told them that W. B. Blount claimed an undivided one-fifth interest, and that his claim was right, and that she did not want any of them to bother him about it, and they all promised and agreed, and after her death they all recognized the right and interest of said W. B. Blount therein. Subsequently, the other four heirs who together inherited a four-fifth interest in said property, making each a one-fifth interest, sold the same, and J. H. Ely finally became the purchaser, and the evidence shows that in these transactions they sold a one-fifth interest in the land, and they were paid for their interest at that rate, and that Ely assumed that amount of the mortgage debt on the land. It also appears that Ely undertook to buy the interest of W. B. Blount, and that there was a correspondence between them, and the letters in evidence show conclusively that a proposition was made to W. B. Blount to buy the interest which he inherited from his mother at $875, and

also a proposition for $528, for the other interest when it was clear of litigation. This, in connection with the consideration recited in the deed to Ely of $872, together with the statement in the deed that Blount was conveying the interest inherited from his mother, shows conclusively that respondent was only undertaking to buy the interest of Blount as an heir of his mother, and as a matter of fact Blount only had a one-fifth interest in his mother's estate, and, while the deed recited a one-fourth interest in the land, it also says which Blount inherited from his mother's estate; as a matter of fact, Blount inherited a one-fifth interest in the land from his mother rather than a one-fourth, but it was a fourth of his mother's interest. I am also firmly convinced that the complainant purchased the one-fifth interest of Blount which the latter had purchased from Chesson without any knowledge or notice of the fact that Chesson had previously conveyed his interest to Priscilla Blount, and that his name had been erased from the deed, but said record and all the records show that Chesson only conveyed his interest to W. B. Blount; the records of the deeds not showing such erasure. It further appears that this condition of the record was agreed to, sanctioned, and caused by the actions of Mrs. Blount herself, and therefore she is estopped from setting her claim against such purchaser. I do not think that the possession of Ely is evidence of notice to the complainant of this infirmity in the title. The record of his deed from Blount showed what interest complainant acquired from Blount, and that deed, together with all the other deeds on record, shows that Ely was not the owner of the entire estate, and his possession is referred to his interest as tenant in common. Besides that, his possession could not in any sense of the word be notice of the erasure in the deed to Mrs. Blount, or

the infirmity in the title of W. B. Blount, and it cannot be presumed that had the complainant in this cause gone to Ely for evidence of his right, claim, or interest in the land that he would have been apprised of more than the conveyances in the chain of title as shown by the record in the case.  I therefore think that complainant stands in the attitude of a bona fide purchaser, and entitled to the relief prayed for."

J. M. CHILTON, R. E. L. COPE, and ERNEST L. BLUE, for appellant.  The subsequent erasure of the name of Chesson from the deed executed to Mrs. Blount did not divest title from Mrs. Blount or revest title in Chesson, even though such had been the intention of the parties.—*Reavis v. Reavis,* 50 Ala. 60; *Carruthers v. Lay,* 51 Ala 390; *Smith v. Cochran,* 66 Ala. 64; *Brady v. Huff,* 75 Ala. 80; *Hollingsworth v. Walker,* 98 Ala. 543.  If Mrs. Blount had been guilty of any conduct estopping her in favor of Blount or his vendee, Brewer could not possibly have acquired more than an equitable title, and where the equities are equal, the legal title must prevail.—*Overall v. Taylor,* 99 Ala. 12; *Brewer v. Brown,* 68 Ala. 210; 1 Pom. sec. 417.  Knowledge of facts is an essential element of ratification.—*Moore v. Ensley,* 112 Ala. 228; 4 Mayf. sec. 518; Brewer could not claim to be a bona fide purchaser for value under a deed thus altered any more than if it had been forged. —*Hollis v. Harris,* 96 Ala. 288; *Burgess v. Blake,* 128 Ala. 105; 2 Cyc. 181.  There is no question but that as between Ely and Blount, Blount intended to sell and Ely intended to buy all of Blount's interest.  Brewer was affected with notice of Ely's equity, no matter what the language of his deed was.—1 Pom. sec. 417.  As to the quantum of interest conveyed, the deed is construed most strongly against the grantor.—13 Cyc. 609, 655; *Chambers v. Ringstoff,* 69 Ala. 140.

O. S. LEWIS, and RAY RUSHTON, for appellee. The deed from Chesson to Lewis conveyed the equitable title which was not divested by the erasure.—*Wisenant v. Gordon,* 101 Ala. 260. But a court of equity will divest the title if the facts show the intention of the parties was by cancellation to divest title in that way.—*Carruthers v. Leigh,* 51 Ala. 390; *Reavis v. Reavis,* 50 Ala. 60; *Mallory v. Stoddar,* 6 Ala. 801; 35 Ohio St. 119; 17 Pick. 213. Chesson had a vendor's lien to secure the purchase money due by Blount, and his vendee acquired the same lien.—*Hood v. Hammond,* 128 Ala. 576; 113 Ala. 597; 65 Ala. 190; 73 Ala. 248; 62 Ala. 107; 57 Ala. 428; 34 Ala. 500. While an estoppel in pais has no effect on the title to land, a court of equity will accord full effect and operation to it.—*Kendricks v. Kelly,* 64 Ala. 388; *S. & N. R. R. Co. v. A. G. S. R. R. Co.,* 102 Ala. 236; *Standifer v. Swain,* 78 Ala. 93; *McCarty v. Woodstock I. Co.,* 92 Ala. 468. On the general doctrine of estoppel asserted in this case as binding on the other parties, see the following authorities.—16 Cyc. 749; 129 Ala. 376; 91 Ala. 569; 40 Ala. 587; 107 Ala. 562; 74 Ala. 845; 19 Ala. 430; 110 S. W. 255; 5 Am. St. Rep. 23; 107 S. W. 210; 126 Ala. 536; 16 Cyc. 681. The proof shows clearly Brewer's purchase from Blount of one-fifth interest in the property, and that he paid value therefor which shifts the burden to respondent to show actual or constructive notice of respondent's claim.—*Hoyt v. Turner,* 84 Ala. 523; *Hodges v. Winston,* 94 Ala. 578; *Bynum v. Gold,* 106 Ala. 434; *Ely v. Pace,* 139 Ala. 293. No eviction is shown so as to make the holding adverse.—*Johns v. Johns,* 93 Ala. 239; *Wells v. Am. Mtg. Co.,* 109 Ala. 430, and authorities, supra.

MAYFIELD, J.—The bill was filed by appellee for partition and accounting between tenants in common.

[Ely, et al. v. Brewer.]

There was a demurrer to the bill, and it was overruled, but there is no insistence as to error in this matter, consequently the ruling on the demurrer will not be noticed. The case was finally submitted for decree on bill, answer, and proof, and a decree rendered, ordering the partition and accounting, and from that decree the appellants (respondents below) prosecute this appeal. Most all of the facts necessary to the decision are admitted, or are without dispute, though there are some material facts which are disputed. As to these we find with the chancellor. The reporter will set out the facts found by the chancellor, as shown in his opinion. On these facts, we have no hesitancy in affirming the decree of the chancellor.

The main question of law involved in the case is whether or not any title passed from J. F. Chesson to W. B. Blount by the conveyance from the former to the latter and, if so, what title so passed. We are of the opinion that no legal title passed by this conveyance, but that an equitable title to a one-fifth interest in the land in question did pass by that deed, and that that title has passed to the complainant by virtue of a deed from said Blount to complainant (appellee here). There is no doubt that Chesson had a vendor's lien on the lands for the purchase price to this extent at the time he executed the deed; and this certainly passed to W. B. Blount, and from him to complainant. While the legal title to this one-fifth interest passed to Priscilla Blount, the mother of W. B. Blount, by the deed from J. F. Chesson to her, and this legal title was not divested by striking the name of said Chesson from the deed after it was delivered, and the conveying to W. B. Blount, and the re-recording of the changed deed, yet such acts did pass the equitable title to said W. B. Blount.

This change was made in perfect good faith and with the firm, but mistaken, belief that the legal title would

thereby vest in said W. B. Blount. It cannot be doubted that Mrs. Priscilla Blount was well apprised of the change, and of the desired end and purpose of the change, and that she consented to it, and never thereafter claimed this fifth interest; and, if she had attempted to claim it, she would certainly have been estopped in a court of equity from asserting it against a bona fide purchaser, such as is the complainant in this case. It is equally certain that this fifth interest never passed by the conveyance of W. B. Blount to appellant.

At the death of Mrs. Priscilla Blount, W. B. Blount inherited a one-fifth interest in these lands in addition to the one-fifth interest which he had obtained by purchase from J. F. Chesson. Appellant purchased the one-fifth interest which Blount inherited from his mother, and no more; he refused to purchase the other one-fifth interest which Blount held by purchase, and Blount subsequently sold this one-fifth interest to the complainant (appellee). We are of the opinion that this record leaves little, if any, doubt that appellee acquired a perfect equitable title to an undivided one-fifth interest in these lands, and thereby became a tenant in common with appellants, to this extent, in the lands the subject-matter of this suit. This being true, and appellant having received the entire rents and profits, denying the right of appellee to share in the possession or the profits, the appellee certainly had the right to have the lands partitioned, and, in order to receive complete justice, to have an accounting and to have his title perfected as to this one-fifth interest.

These principles of law are too well known to require citations of authority.

Affirmed.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.